## E. H. FREAR v. J. A. WILLIAMS.

1. WILLS. *Revocation of: What will not constitute.* The testator signed his surname to his will immediately after his given name, which had been written by the draftsman in writing the attesting clause, in the presence of two witnesses, who subscribed the attesting clause at his request. Two days thereafter, being doubtful as to the validity of such a signature, he sent for two other witnesses, one of whom erased the surname at testator's request, when he signed his full name. These two witnesses, at his request, and in his presence, signed their names under those of the former witnesses: *Held,* that the erasure did not amount to a revocation of the will, as it did not appear to be his *intention* to cancel his will, and all the facts and circumstances may be looked to in arriving at the testator's *intentions.*

   Code cited: Sec. 2162.

2. SAME. *Insanity of testator. Burden of proof.* Where a will is contested on the ground of testator's insanity, the formal execution of the will having been proved, the presumption of sanity arises, and the will may be read to the jury, without requiring the executor to further prove the sanity of testator.

Frear *v.* Williams.

3. SAME. *Same. Same.* Where the executor fails to prove the sanity of the testator by the subscribing witnesses, he is not precluded from resorting to other witnesses to establish such fact.

See Murdock *v.* Leigh, 10 Heis., 166.

FROM FAYETTE.

Appeal from the Circuit Court. THOS. J. FLIPPIN, Judge.

J. W. HARRIS for plaintiff.

H. C. MOOREMAN for defendant.

NICHOLSON, C. J., delivered the opinion of the court.

This is an issue made up in the Circuit Court of Fayette county, to try the question whether a paper propounded as the will of J. T. Williams was his will or not? The paper was propounded by J. A. Williams, named as executor, and its validity, as the will of J. T. Williams, was contested by E. H. Frear and Rebecca Polk, his nephew and niece. The paper was set up as the will of the testator by the verdict of the jury, and the judgment of the court, and it is here by appeal by the contestants.

The validity of the paper as a will to convey lands was contested on these grounds: First, because there was not a due and proper execution of it; second, for want of capacity in the testator; and third, because procured to be executed under improper and undue influence.

1st. As to its proper execution. As the will de-

vised lands, it was essential that it should be subscribed by two witnesses at least: Code, sec. 2162. The paper, as offered on the issue, was subscribed by four witnesses, all of whom testified that it was signed by the testator in their presence, and subscribed by them as witnesses at his request, and three of them prove affirmatively and directly that the testator was of sound and disposing mind and memory. The fourth declined to express an opinion as to his testamentary capacity, because he did not professs to know how much mental capacity a testator should have to make him capable of making a valid will, but he proceeded to state such facts as clearly showed that the testator was of sound mind and disposing memory. Yet on these facts the witness declined to express an opinion for the reason already stated.

The question as to the due execution of the will is raised upon the following facts, which were proven by the subscribing witnesses:

It appears that the will was prepared on the morning of February 16, 1870, and in the evening of that day testator sent for two neighbors, viz: R. J. Hart and W. H. Jamison, and in their presence signed his surname, Williams, to the will immediately after his given name, Jefferson T, which had been written by the draftsman in inserting his name in the attesting clause. The two witnesses subscribed the attesting clause at his request. Upon looking at the paper two days afterwards, and observing that he had only signed his surname, and being doubtful whether that was a due execution of the paper, testator sent

for two other neighbors, and stating to them the fact that he had not signed his full name, he requested one of them to take his knife and erase his name "Williams," as signed by him, in order that he might remove all doubt by signing his full name. The name was erased, as requested, and then he signed his full name over the erased name, and at his request, and in his presence, the other two neighbors, viz: J. A. Lipscomb and D. J. Armour, subscribed their names under the names of Hart and Jamison as attesting witnesses.

It is argued now that the erasure of the surname of the testator was a revocation of the will executed on the 16th of February, and his signing of it on the 18th, and its attestation by two witnesses, was a republication of his will, and, consequently, as the two first witnesses were not present at the republication, the will, in fact, was only attested by the two last witnesses, Lipscomb. and Armour. And as Armour declined to express the opinion that testator was of sound and disposing mind and memory, therefore the will was only proven by one of the subscribing witnesses.

The first answer to this position is, that the erasure of the name "Williams" was not a revocation, in fact or in law, of his will. Whether the erasure of the name was a revocation of the will depends entirely upon the intention with which it was done. The burning, cancelling, tearing, or otherwise destroying a will will not constitute a valid revocation, unless done with the intent to revoke: 1 Redf. on Wills, 304.

In *Bethel* v. *Moore,* 2 Dev. & Batt., 316, Chief Justice Ruffin said: " It may be admitted that the slightest act of cancellation, with intent to revoke absolutely, although such intent continue only · for a moment, is a total and perpetual revocation, and the paper can only be set up as a new will. But that is founded on the intent. Without such intention no such effect can follow, for the purpose of the mind gives the character to the act. When, therefore, there appears what may be called a cancellation, it becomes necessary to look to the extent of it, at all the conduct of the testator, at what he professed doing at the time, and what he did afterwards, to satisfy the mind whether that was meant, in fact, as a cancelling, and was to operate as a revocation immediately and absolutely, or only conditionally, upon the contemplation of something else then in view; for, although every act of cancelling imports *prima facie* that it is done, yet it is but a presumption, which may be repelled by accompanying circumstances."

This we adopt as a clear and satisfactory exposition of the law, and it is conclusive as to the present question. . The testator had no purpose to revoke his will, but his whole object was to place the validity of its due execution beyond all doubt. He intended to make it clear that his will was properly executed, and to effect this end he called in two other witnesses, and called their special attention to the object he had in view. He did not mean that he had not, in fact, signed his will, and called the two first witnesses to attest his testamentary act, but for fear his signature

was defective, he re-affirms what he did in their presence, and calls two others to attest a more formal signature.

It follows that there were four subscribing witnesses to the execution of the will, and that as all of them were clear and explicit as to all the facts necessary to constitute its due execution, so far as it was incumbent on the executor to prove its due execution in the first instance; and, as three out of the four proved, in addition, the testamentary capacity of the testator in direct and express terms, the objection taken by the contestants would be untenable, even if the fourth witness had not shown by his testimony that testator had testamentary capacity, although the witness declined to express an opinion to that effect. There was, therefore, no error in the ruling of the court as to the erasure of the name of "Williams" not being a revocation, and in allowing the four witnesses to testify as subscribing witnesses.

But if it were conceded that the erasure of the name was a revocation, and that the re-signing and re-altering of the will constituted a re-publication of it as a new will, the proof of the fact of execution was sufficient to throw the burden of proving the incapacity of the testator upon the contestants.

Although there seems to be much conflict in the several States on this question, it is settled in this State, that under our statute, when the validity of a will is contested on the ground of insanity of the testator, the executor is only required to prove the fact of the formal execution by two subscribing witnesses;

the law then raises the presumption of sanity, and the burden of overturning this presumption is cast upon the contestants. This rule rests upon the principle that every man is presumed to be sane, and when insanity is alleged it devolves upon the party alleging it to overturn the presumption arising from the fact of execution.

It results, that even if the subscribing witnesses should fail to prove the testamentary capacity of the testator, the executor would not be precluded from establishing his sanity by other testimony.

There was, therefore, no error in allowing the will to be read to the jury after proof by the subscribing witnesses of the execution of the will, without proving the soundness of mind of the testator by them.

2d. The questions as to the testamentary capacity of the testator, and as to the procurement of the will by undue influence, were submitted to the jury upon the proof, and found in favor of the executor.

A careful examination of the evidence on both questions satisfies us that the finding of the jury was well sustained by the proof.

3d. A number of exceptions are taken to the charge of the court, but it seems to us to be full and accurate on all the questions raised by the evidence. If the court was not sufficiently explicit on any of the various points involved, it was the duty of the parties excepting to have called for further and more explicit instructions. This was not done, and we cannot hold that there was any error unless it appeared that further instructions were called for and refused.

We are of opinion that upon the facts and the law the case was fairly tried, and its merits reached by the verdict and the judgment, and the same is affirmed.